a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| M P, <br> Plaintiff | CIVIL DOCKET NO. 1:22-CV-06123 <br> SEC P |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| WILLIAM P JOYCE ET AL, <br> Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF Nos. 1, 27) filed on behalf of Petitioner, M.P.[1]  M.P. is an immigration detainee at the Winn Correctional Center ("WCC") in Winnfield, Louisiana.  ECF No. 36 at 3.  He challenges the legality of his continued detention including the conditions of his confinement.

Because M.P.'s claim regarding the conditions of his confinement and his claim under the Rehabilitation Act cannot be raised in a § 2241 Petition, and because M.P. fails to state a viable claim under § 2241, his Petition should be DENIED in part and DISMISSED in part for lack of jurisdiction.

---

[1] Counsel for M.P. filed a request to use a pseudonym in place of the Petitioner's name in the transferor Court, the Southern District of New York.  ECF. No. 4.  Following the transfer, this Court granted the request.  ECF No. 26.

1

I.   Background

M.P. is a native and citizen of El Salvador. He first entered the United States on August 11, 2018, without a valid immigrant visa, reentry permit, border crossing card, or other valid entry document. ECF Nos. 27 at 8; 31-1 at 1. He was ordered removed on February 6, 2019. ECF Nos. 27 at 9; 31-1 at 1. M.P. was removed to El Salvador on April 11, 2019. ECF No. 31-1 at 1.

M.P. reentered the United States unlawfully on June 10, 2019. ECF Nos. 27 at 9; 31-1 at 1. He was detained by the Department of Homeland Security ("DHS"), and the prior removal order was reinstated. *Id.* M.P. was removed to El Salvador again on September 12, 2019. *Id.*

On May 12, 2021, DHS was notified by another law enforcement agency that M.P. had been arrested in New York.

M.P. was transferred to the custody of DHS on March 8, 2022. ECF No. 31-1 at 2.

On April 11, 2022, M.P. attended a hearing in Immigration Court and asked for a continuance to find an attorney. *Id.*; ECF No. 27 at 9. The request was granted, and the matter was rescheduled for April 25, 2022. *Id.* At the next appearance, M.P.'s attorney asked for a continuance, which was granted. *Id.*

On May 10, 2022, M.P. filed an application for withholding of removal and protection under the Convention Against Torture, and the matter was continued pursuant to a request for M.P. to receive a psychological evaluation. *Id.* The hearing was reset several times. On August 19, 2022, it was determined that M.P. was

2

competent, and a merits adjudication was scheduled for September 27, 2022. ECF Nos. 31-1 at 2; 27 at 9.

On September 4, 2022, M.P. was transported to the Emergency Department after suffering abrasions on his left wrist. ECF No. 31 at 4. M.P. alleges that he "swallowed all the pills he had in his cell and cut his own arms with a nail clipper, the only sharp object he had, in an attempt to end his own life." ECF No. 27 at 15. Upon return to the DHS facility, M.P. was placed on suicide watch. ECF No. 31-1 at 2.

On September 27, 2022, the Immigration Judge denied M.P.'s application for relief from removal. M.P. appealed the decision to the Board of Immigration Appeals ("BIA"). *Id.* at 3. According to the EOIR Automated Case Information website, the BIA dismissed the appeal on March 2, 2023, and a Motion to Reopen BIA Jurisdiction was filed on March 17, 2023.[2]

M.P. filed a Petition for Review of Agency Order in the United States Court of Appeals for the Second Circuit on March 2, 2023. *See* Case No. 23-6200 (2nd Cir.). And according to the docket report from CM/ECF, M.P. recently filed another Petition for Review of Agency Order in the Second Circuit on July 25, 2023. *See* Case No. 23-6815 (2nd Cir.).

M.P. received a 270-day post order custody review on January 19, 2023, and it was determined that M.P. should remain in custody. *Id.* at 3.

---

[2] https://acis.eoir.justice.gov/en/caseInformation

3

M.P. argues that the Due Process Clause of the Fifth Amendment requires that he be afforded "immediate release or, at a minimum, a bond hearing." ECF No. 27 at 41.

## II. Law and Analysis

M.P. and the Government agree that he is subject to mandatory detention during the pendency of his removal proceedings pursuant to 8 U.S.C. § 1231(a) because he is subject to a reinstated order of removal.[3] ECF Nos. 27 at 41; 31 at 4. The statute authorizes the Government to detain aliens ordered to be removed and gives the Government 90 days to remove them from the United States—the "removal period." *Id.* at § 1231(a)(1)–(2). After the removal period expires, the Government can either continue to detain these aliens or release them under supervision.[4] *See Demore v. Kim*, 538 U.S. 510, 527 (2003) ("Section 1231(a)(6) provides, among other things, that when an alien who has been ordered removed is not in fact removed during the 90-day statutory 'removal period,' the alien 'may be detained beyond the removal period' in the discretion of the Attorney General."). The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

---

[3] The Government's authority to detain aliens ordered removed derives from § 1231(a)(2). *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). Section 1231(a)(5) states that an alien who illegally reenters the United States after having been removed or having voluntarily departed, while under a removal order, shall be removed by reinstating the removal order from its original date. *See* 8 U.S.C. § 1231(a)(5); *see also* 8 C.F.R. § 241.8(a).

[4] The language in § 1231 makes no mention of a bond hearing requirement like § 1226, but aliens subject to a reinstated removal order may still be released under the terms of supervision in the statute. *See* 8 U.S.C. § 1231(a)(3) (establishing conditions of release after removal period).

4

The Government may even detain these aliens beyond the removal period if the district director conducts a Post-Order Custody Review ("POCR"), and the aliens' removal will not be accomplished during the removal period. *See* 8 C.F.R. § 241.4(k)(1)(i).[5] If the district director decides that the aliens should remain in custody pending removal, DHS must continue to provide periodic reviews for as long as the aliens remain in custody pending removal. *See id.* § 241.4(k).

M.P. argues that that § 1231 is unconstitutional as applied to him, both substantively and procedurally.[6] He also claims that his detention violates the Eighth Amendment and the Rehabilitation Act.

### A. M.P. is not in custody in violation of his substantive due process rights pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).

*Zadvydas* established the framework for aliens subject to a removal order to bring an as-applied challenge to § 1231—namely, challenging whether their detention beyond the removal period is unreasonable. *See Zadvydas*, 533 U.S. at 689; *see also, Rodriguez Del Rio v. Price*, 20-CV-00217, 2020 WL 7680560, at *2 (W.D. Tex. 2020);

---

[5] A POCR consists of a review of the aliens' records and documents submitted by or on behalf of the aliens, which the district director relies on to decide whether the aliens should remain in custody pending removal. *See* 8 C.F.R. §§ 241.4 (k)(1)(i), 241.4(h)(1); *see also id.* at §§ 241.4(e)–(f) (outlining criteria for release and factors to be weighed in considering whether to recommend further detention or release of a detainee).

[6] Constitutional challenges to a statute that purportedly infringes on a fundamental right can be brought either as facial or as-applied challenges. *See United States v. Luna*, 165 F. 3d 316, 319–22 (5th Cir. 1999). Under a facial challenge, the challenger must establish that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Barnes v. State of Miss.*, 992 F.2d 1335, 1343 (5th Cir. 1993). In contrast, an "as-applied challenge ... requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day*, 463 F. 3d at 174–75; *see Jurek v. Estelle*, 593 F.2d 672, 685 n.26 (5th Cir. 1979), *on reh'g*, 623 F.2d 929 (5th Cir. 1980); *see also Fuentes-De Canjura v. McAleenan*, 19-CV-00149, 2019 WL 4739411, at *9 (W.D. Tex. 2019).

*Fuentes-De Canjura v. McAleenan*, 19-CV-00149, 2019 WL 4739411, at *7 (W.D. Tex. 2019). In *Zadvydas*, the Supreme Court concluded that indefinite detention under § 1231 presents a "serious constitutional problem" when the statute's goal—"assuring the alien's presence at the moment of removal"—no longer bears a "reasonable relation" to the alien's detention and removal seems "a remote possibility at best." *Zadvydas*, 533 U.S. at 690. The Supreme Court held that the Government's authority to detain an alien under § 1231 ends "once removal is no longer reasonably foreseeable." *Id.* at 699. In such cases where the Government cannot continue to detain the alien, the alien is still subject to supervision under § 1231(a)(3).[7] *See id.* at 696.

Accordingly, the Supreme Court recognized that a six-month detention was "presumptively reasonable" under the statute. *Id.* at 689. For the detention to remain reasonable, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* This presumption applies to all categories of aliens covered by § 1231. *See Tran v. Mukasey*, 515 F.3d 478, 482 (5th Cir. 2008) (citing *Clark v. Martinez*, 543 U.S. 371, 378 (2005)). However, this presumption does not mean that every alien must be released after six months. *See Zadvydas*, 533 U.S. at 689.

---

[7] While the language in § 1231 makes no mention of a bond hearing requirement like § 1226, aliens subject to a reinstated removal order may still be released under the terms of supervision in the statute. See 8 U.S.C. § 1231(a)(3) (establishing conditions of release after removal period).

6

After the presumptively reasonable six-month period expires, aliens can attack the reasonableness of their detention by providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). Aliens bear the initial burden of proof. *See Andrade*, 459 F.3d at 543–44. To meet this burden, an alien must allege sufficient evidence establishing "that there is no significant likelihood of removal in the reasonably foreseeable future," and not merely offer conclusory statements suggesting that removal will not occur immediately following the resolution of their appeals. *Id.* (citing *Zadvydas*, 553 U.S. at 701). Once the alien makes that showing, "the Government must respond with evidence sufficient to rebut [it]." *Zadvydas*, 553 U.S. at 701.

M.P. has been in post-removal order detention for well over six months. He argues that his removal is not significantly likely to occur in the reasonably foreseeable future because, at the time of filing his § 2241 Petition, he had just begun the process of appealing the Immigration Judge's denial of his application, the BIA had not set a briefing schedule, and the BIA would take months to review the appeal. ECF No. 1 at 40. However, the appeal has now been denied. Still, M.P. has not been removed because of ongoing proceedings in the Second Circuit.

M.P.'s confinement is not "potentially permanent." *Zadvydas,* 553 U.S. at 691. There is "a certain end point to the proceedings related to his pending petition for review" and "it appears reasonably likely that he will be removed in the foreseeable future if his petition is denied." *Thompson v. Holder*, 374 F. App'x 522, 523 (5th Cir.

7

2010). In fact, it is uncontested that removals to El Salvador occur on a biweekly basis, and the country does not require travel documents for repatriation. ECF No. 38-1 at 2. M.P. does not argue or demonstrate that the Government will not be able to swiftly remove him from this country once his legal proceedings are concluded (if removal continues to be the appropriate disposition).

While M.P. has a legal right to seek judicial relief, it is apparent that the appeals, requests for stay, and his pending civil litigation are the sole cause for his continued detention. "Courts in this Circuit have repeatedly held that detention is neither indefinite nor potentially permanent where the delay in removal is directly attributable to the litigation activity of the alien." *Virani v. Huron*, 19-CV-00499, 2020 WL 1333172, at *6 (W.D. Tex. 2020) (collecting cases); *Fuentes-De Canjura v. McAleenan*, 19-CV-00149, 2019 WL 4739411, at *7 (W.D. Tex. 2019); *Hernandez-Esquivel v. Castro*, 17-CV-0564, 2018 WL 3097029, at *5 (W.D. Tex. 2018) (continued detention is solely attributable to ongoing collateral proceedings initiated to challenge removability); *Okechukwu Mummee Amadi v. Young*, 06-CV-1138, 2007 WL 855358, at *4 (W.D. La. 2007) (aliens cannot assert a viable constitutional claim when their allegedly unreasonable prolonged detention is caused by their own plight).

Although M.P.'s detention has extended beyond the presumptively reasonable period, this Court and others have found similar and longer periods of detention were not unreasonable. *See Barrera Romero v. Cole*, 16-CV-00148, 2016 WL 7041710, at *2 (W.D. La. 2016), *report and recommendation adopted sub nom. Barrera Romero v. Warden, Lasalle Det. Facility*, 2016 WL 7041614 (20 months); *Fuentes-De Canjura*,

2019 WL 4739411, at *8 (over 20 months); *Barrera Romero*, 2016 WL 7041710, at *2 (20 months); *Mancera v. Kreitzman*, 16-CV-89, 2016 WL 1249600, at *4 (E.D. Wis. 2016) (23 months); *Garcia v. Lacy*, 12-CV-3333, 2013 WL 3805730, at *5 (S.D. Tex. 2013) (27 months); *Kim v. Obama*, 12-CV-173, 2010 WL 10862140, at *3 (W.D. Tex. 2012) (18 months).

M.P.'s detention is neither indefinite nor potentially permanent.

    B.    <u>M.P. is not in custody in violation of his procedural due process rights.</u>

In a procedural due process claim, it is not the deprivation of liberty that is unconstitutional; it is the deprivation of liberty without adequate procedural safeguards. *See Virani v. Huron*, 19-CV-00499, 2020 WL 1333172, at *8 (W.D. Tex. 2020) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The regulations promulgated after *Zadvydas* aim to provide procedural safeguards.

In *Bonitto v. Bureau of Immigration & Customs Enf't*, 547 F.Supp.2d 747, 758 (S.D. Tex. 2008), the district court found that the petitioner could not establish a substantive due process violation, but it conditionally granted the habeas petition based on a procedural due process violation. Specifically, DHS had failed to afford the petitioner the required 180-day review. *Id.* Thus, the petitioner did not receive his procedural safeguards. Still, the Court did not order the petitioner's release or a bond hearing. It ordered DHS to conduct the required custody review. *Id.*

9

It is undisputed that M.P. received the requisite custody panel reviews. ECF No. 31-1. M.P. has had the opportunity to file an application with an immigration judge, which was denied. He availed himself of the opportunity to file an appeal, which was dismissed. He filed a motion to reopen BIA jurisdiction and a humanitarian relief request, which are pending. Additionally, M.P. has been afforded the opportunity for judicial review and has two cases pending in the Second Circuit. M.P. has been afforded numerous procedural safeguards.

Significantly, the United States Supreme Court has held that § 1231(a) does not require the Government to provide noncitizens detained for six months with bond hearings. *See Johnson v. Arteaga-Martinez*, 142 S.Ct. 1827, 1828 (2022). Instead, the Government possesses discretion to provide bond hearings under § 1231(a)(6). *Id.* at 1834. Although *Arteaga-Martinez* may have left open the issue of whether the Constitution itself permits indefinite detention without a hearing, *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2062-63 (2022), eliminated the possibility of class-wide injunctive relief for constitutional violations related to prolonged post-removal-order detention. Regardless, and even if a hearing is required for post-removal-order detention that has become indefinite, M.P.'s detention is neither "indefinite" nor "potentially permanent," as discussed above. *See Virani*, 2020 WL 1333172, at *6); *Fuentes-De Canjura*, 2019 WL 4739411, at *7; *Hernandez-Esquivel*, 2018 WL 3097029, at *5; *Amadi*, 2007 WL 855358, at *4.

Finally, to the extent the *Mathews* factors should be applied to M.P.'s claim, it still fails. *Mathews* outlines a three-part "flexible" test to determine whether due

process complies with the Constitution. *Mathews*, 424 U.S. at 321. Under *Mathews*, courts consider: (1) the individual's interest; (2) the government's interest; and (3) the risk of erroneous deprivation of the right absent further procedures. *Id.* at 334.

Clearly M.P. has a liberty interest in freedom from lengthy imprisonment. However, M.P.'s liberty interest is diminished because he is subject to an order of removal. *See, e.g., Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). And his private interest is further diminished because, as discussed above, M.P.'s decision to continue to challenge his removal is the sole cause of his prolonged detention. *Id.*[8]

The Government has a strong interest in preventing aliens from remaining in the United States in violation of our laws. *See Demore*, 538 U.S. at 518. It also has an interest in enforcing immigration laws and ensuring a successful removal. M.P. has already been deported twice. As the Supreme Court noted, "aliens who reentered the country illegally after removal have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order." *Johnson v. Guzman Chavez*, 141 S.Ct. 2271, 2290 (2021). Therefore, the Government's interest is significant in this case.

Finally, the risk of erroneous deprivation is low. M.P. received an individual merits hearing on his request for relief from removal. He was represented by counsel

---

[8] In evaluating Petitioner's interests under the first prong of the *Mathews* test, where he was detained under § 1226(a), the appellate court noted: "[W]e cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." It also stated: "Indeed, as the government points out, by Rodriguez Diaz's (and the dissent's) logic, § 1226(a) would be unconstitutional as to most any alien who elects to challenge a removal order, given the amount of time such a typically challenge takes." *Id.*

11

at that hearing.  ECF No. 31-1 at 3; No. 1-4 at 3.  M.P.'s requests for relief have been evaluated by the immigration judge, the BIA, and are currently before the Second Circuit.  M.P. can, and has, requested bond hearings.  Many procedures have been available to M.P., although he disagrees with the outcome of each.

Therefore, the *Mathews* factors weigh in favor of the Government.

### C. M.P. fails to state a claim for his release under the Rehabilitation Act or because of the conditions of his confinement.

M.P. asserts that, due to his particular health and circumstances, the Court should order the Government to release him or provide a bond hearing.  Specifically, M.P. complains that the conditions in which he has been confined are punitive, and he cannot receive the mental health treatment he requires while in detention.

However, habeas is not available to review questions unrelated to the cause of detention.  *See Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 216 (2021).  Unconstitutional conditions of confinement—even conditions that create a risk of serious physical injury, illness, or death—do not warrant release.  *Cureno Hernandez v. Mora*, 467 F.Supp. 3d 454, 460 (N.D. Tex. 2020) (citing *Spencer v. Bragg*, 310 F. App'x 678, 679 (5th Cir. 2009) and *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997)); *Nogales v. Dep't of Homeland Sec.*, 524 F.Supp.3d 538, 543 (N.D. Tex. 2021), *aff'd*, 21-10236, 2022 WL 851738 (5th Cir. 2022).  Nor do allegations of mistreatment that amount to cruel and unusual punishment nullify an otherwise lawful detention.  *See id.* (citing *Cook v. Hanberry*, 596 F.2d 658, 660 (5th Cir. 1979)).  Rather, the proper remedy for unconstitutional conditions of confinement should be equitable—to enjoin the unlawful practices that make the conditions intolerable.  *See*

12

*id.* A demand for release does not convert a conditions-of-confinement claim into a proper habeas request. *Id.* (citing *Springer v. Underwood*, No. 3:19-CV-1433, 2019 WL 3307220, at *2 (N.D. Tex. 2019), *report and recommendation adopted*, 2019 WL 3306130); *Vetcher v. Sessions*, 3:18-CV-1724, 2018 WL 4006813, at *2 (N.D. Tex. 2018) (a petitioner may not challenge the conditions of confinement through a habeas action) (citing *Ruiz v. Davis*, 850 F.3d 225, 229 (5th Cir. 2017)).

Even if M.P.'s conditions-of-confinement claim could be considered, it would fail because he cannot establish that he is being treated with deliberate indifference. M.P. complains that he was held in solitary confinement for approximately two months and attempted suicide while housed at Adams County Correctional Center in Natchez, Mississippi. ECF No. 36-1 at 1. M.P. was transferred to the LaSalle ICE Processing Center in Jena, Louisiana, where he was held in isolation for two 30-day periods due to disciplinary offenses. *Id.* at 2. It is alleged that, because of the trauma of being held in isolation and brought to appointments in shackles, M.P. refused to attend his physical and mental health appointments at the Processing Center. Thus, M.P. did not receive his psychiatric medication for a period of time. *Id.*

However, since his June 9, 2023, transfer to WCC, M.P. has received additional medical care and evaluations. On June 10, 2023, M.P. was evaluated by a mental health nurse practitioner and diagnosed with major depressive disorder and insomnia. He was prescribed Remeron. ECF No. 38-1 at 2. M.P. was seen again by the mental health nurse practitioner on June 12, 2023. He was also examined that day by a regular nurse practitioner who continued his lisinopril and meloxicam. *Id.*

13

On June 26, 2023, M.P. was examined by the mental health nurse practitioner, and he reported that his insomnia was improving but he still felt depressed and alone. *Id.* In addition to Remeron, M.P. was prescribed Lexapro. *Id.* At a follow-up appointment on June 29, 2023, M.P. reported that he was eating and sleeping fine, but felt frustrated. *Id.* WCC staff received an email from M.P.'s attorney on July 5, 2023, stating that M.P. reported negative side effects from the medication. M.P. was seen the next day and requested that the Lexapro be discontinued. *Id.* As of July 20, 2023, M.P. was scheduled for a regular follow-up in 30 days. He had not requested any additional treatment. *Id.*

Therefore, it appears that M.P. is receiving frequent and regular medical and mental health care since his transfer to WCC. M.P. has access to medical, dental, and mental health care, as well as daily sick call. There is a 24-hour medical team available for emergency care, and mental health providers are on call. *Id.* at 1. Although M.P. cites to a news article about general conditions at WCC, it appears that M.P. is receiving mental and physical health care, and the Government is not deliberately indifferent.

Although M.P. complains that the Government is focusing exclusively on M.P.'s treatment at WCC rather than the treatment received at prior places of incarceration, it is M.P.'s current situation that would be considered in determining whether his present confinement is constitutional. A claim for relief based on prior confinement is moot. Thus, even if M.P.'s claim could be raised in this habeas action, it would be subject to dismissal.

M.P. also fails to state a viable habeas claim under the Rehabilitation Act. Section 504 of the Rehabilitation Act requires federal agencies to provide "reasonable accommodations" to individuals with disabilities so they can fully participate in benefits administered by these agencies. *See* 29 U.S.C. § 794(a). But, like claims regarding conditions of confinement, Rehabilitation Act claims do not arise under § 2241. *See Morales v. Gillis*, 5:20-CV-181, 2021 WL 4319590, at *3 (S.D. Miss. 2021), *report and recommendation adopted*, 2021 WL 4316947 (citing *Gorrell v. Hastings*, 541 F. App'x 943, 945 (11th Cir. 2013) (affirming dismissal of Rehabilitation Act claim as improperly asserted in a § 2241 habeas petition); *Francois v. Garcia*, 509 F. Supp. 3d 668, 673 (S.D. Tex. 2020) (Rehabilitation Act claim is not cognizable under § 2241); *Aigebkaen v. Warden*, 2020 WL 6883438, at *5 (D. N.J. 2020); *Prucha v. Watson*, 2020 WL 620005, at *2 (S.D. Ind. 2020)).

Even if the claim did arise under § 2241, courts in this Circuit and elsewhere have precluded federal detainees from bringing Rehabilitation Act claims against the federal agencies housing them.[9] But, assuming even further that a federal alien-

---

[9] *See, Acha v. Wolf,* 20-CV-1696, 2021 WL 537101, at *7 (W.D. La. 2021), *report and recommendation adopted*, 2021 WL 536243 (citing *e.g., Toure v. Huron*, 2021 WL 75698, at *5 (W.D. Tex. 2021); *Roark v. Flanery*, 2014 WL 4447451, at *27 (E.D. Tex. 2014) ("[T]he Bureau of Prisons does not fit within the definition of 'programs or activities' governed by § 794(a)."); *Hickman v. Mercado*, 2014 WL 66778, at *7 (N.D. Tex. 2014) (finding that an action against federal government officials in their official capacity is an action against the United States and its agencies who are, therefore, shielded by sovereign immunity); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (holding that Rehabilitation Act does not apply to federal prisons); *Hurtado v. Reno*, 34 F. Supp. 2d 1261, 1264 (D. Colo. 1999) (holding that an immigration detainee could not bring a Rehabilitation Act claim against Immigration and Naturalization Service ("INS"), the predecessor to ICE); *see also Inko-Tariah v. Lappin*, 2009 WL 8652932, at *1 (E.D. N.C. 2009), *aff'd*, 346 F. App'x 915 (4th Cir. 2009); *Sandler v. Anderson*, 2008 WL 2610130, at *2 (W.D. Mo. 2008)).

detainee could obtain relief under the Rehabilitation Act using a habeas corpus petition, M.P. does not plead or establish that he is entitled to relief.

To establish a prima facie case under the Rehabilitation Act, a plaintiff must show: "(1) the plaintiff is an individual with a disability under the Rehabilitation Act; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her disability; and (4) the relevant program or activity is receiving federal financial assistance." *Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*, 589 F. Supp. 2d 759, 764 (S.D. Miss. 2008); *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citation omitted).

M.P. fails to demonstrate that he is being treated differently because of his alleged disability. His implication that he is being transferred to a certain facility or denied care because of his alleged disability is conclusory. Nor can he show that the Government is detaining him or unable to remove him because of his alleged disability. Accordingly, to the extent the Rehabilitation Act claim could be raised under § 2241, it would fail.

### III. Conclusion

Because M.P.'s claim regarding the conditions of his confinement and his claim under the Rehabilitation Act are not properly raised under § 2241, IT IS RECOMMENDED that those claims be DISMISSED WITHOUT PREJUDICE for

lack of jurisdiction.  IT IS FURTHER RECOMMENDED that the remainder of M.P.'s claims be DENIED AND DISMISSED WITHOUT PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Wednesday, August 9, 2023.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE